Argued November 19, affirmed December 2, 1959

MARTINSON ET AL *v.* ANDREWS

347 P. 2d 53

*Thomas E. Cooney,* Portland, argued the cause for appellant. With him on the brief were Walter J. Cosgrave and Maguire, Shields, Morrison & Bailey, Portland.

*Paul R. Meyer,* Portland, argued the cause for respondents. With him on the brief were King, Miller, Anderson, Nash & Yerke, Portland.

Before McAllister, Chief Justice, and Rossman, Sloan and King, Justices.

SLOAN, J.

This is a suit to require an accounting. The plaintiffs are the owners of contractual rights to fractional shares of the proceeds derived from inventions conceived and patented by defendant Andrews. The trial court required defendant Andrews to account and, as a result of the accounting, awarded judgment against him in favor of both plaintiffs. The defendant Andrews appeals. The suit against the defendant A. M. Andrews Company, a corporation, was dismissed. It is not involved in this appeal.

The disposition of this case does not require a detailed statement of the complicated factual back-

ground. Such an extended statement of the facts would be of interest only to the parties. It is enough to say that prior to 1948 defendant devised and patented a method and machine which could bond or seal together the edges of plastic materials. In 1948 defendant organized the A. M. Andrews Company, hereafter called "company," to commercially exploit the patented inventions. The defendant Andrews was issued 50 per cent of the stock of company in exchange for a nonexclusive license granted to that company to manufacture and sell the inventions. At that time defendant interested the plaintiffs in the inventions and each bought stock in the company.

In 1950 plaintiffs for the first time learned of the limited rights the Andrews Company had in the inventions. Bargaining, which followed plaintiffs' discovery of this state of affairs, resulted in an agreement between plaintiffs and defendant. The agreement also fixed the rights of other stockholders but we are only concerned with plaintiffs' rights thereby secured. This agreement is the controlling feature of this case. The pertinent paragraphs provided:

"(2) In payment for said shares First Party [defendant] does hereby assign, transfer, set over and grant to each of Second Parties [plaintiffs] executing this agreement, their heirs and assigns, that part and percentage computed by multiplying 1/384th by the number of shares owned by each Second Party of the following:

"(a) All proceeds, profits, rentals, royalties, moneys and income derived or to be derived from or accruing by reason of or from any and all sales, licensing or other agreements pertaining to inventions of First Party covered by patent applications bearing Serial No. 747960, Series of 1935, filing date February 10, 1947, Series No. 32780, Series of 1948, and Serial No. 31454, Series of 1948, and all divisions, continua-

tions, reissues and extensions of any of the foregoing patents and patent applications and all patents issued on any such applications and all patents of First Party which modify, amend or improve any of said patents or the original inventions.

"(b)  All proceeds, profits, rentals, royalties, moneys and income derived or to be derived from or on account of those certain agreements by and between First Party and Phillips Screw Company, a Delaware corporation, designated as "Operating Agreement" under date the 28th day of July, 1949, and "Memorandum of Supplementary Agreement" under date the 6th day of October, 1949, limited, however, to such proceeds, profits, rentals, royalties, moneys and income attributable to the territory covered by United States Letters Patent."

As indicated, this agreement bound the defendant individually.  Coincident with the execution of the above agreement and supplemental thereto plaintiffs transferred to defendant their shares of stock in the Andrews Company and the nonexclusive license agreement between Andrews and the Andrews Company was cancelled.  As a result Andrews became, for all practical purposes, the sole owner of the Andrews Company.  He also was the sole owner and in possession and control of the patents, subject only to a license agreement with the Phillips Screw Company mentioned in paragraph (2b).  The latter agreement did not restrict his right to employ the inventions to any appreciable extent.

██ We think the relationship created by the agreement between these parties partakes of that of coadventurers in which defendant assumed the role of a fiduciary.  It imposed "upon the participants the obligation of loyalty to the joint concern and of the utmost good faith, fairness and honesty in their deal-

ings with each other with respect to the matters pertaining to the enterprise. This is especially true of those to whom the conduct of the enterprise or the property involved therein is entrusted. Such a party will be regarded as a trustee and will not be permitted to enjoy any unfair advantage because of his possession or control of the joint property." *McIver v. Norman,* 187 Or 516, 536, 205 P2d 137, 213 P2d 144.

Prior to this agreement and for a limited period thereafter the defendant attempted to exploit this invention by the manufacture and sale of the patented machines. This did not prove successful. In 1952 defendant devised a lawn sprinkler which was fabricated by the patented machine and method. The sale of the lawn sprinkler was successful. In fact, total sales of the sprinkler exceeded two million dollars for the five-year period for which this accounting was sought. During all of this period there were only one or two sales of the machine itself and the evidence would indicate defendant made little or no effort to sell the machine.

Within the United States the manufacture and sale of the plastic lawn sprinkler was conducted exclusively by defendant's alter ego, the A. M. Andrews Company. Bear in mind plaintiffs' agreement was with Andrews individually. When plaintiffs learned of the apparent profits being derived from the use of the machine they demanded the right to participate and, eventually, filed this suit. Defendant resisted plaintiffs' demands and this suit by insisting, first, that the Andrews Company had acquired "shop rights" in the invention, and, second, that the original non-exclusive license granted to the Andrews Company permitted the company to exercise an irrevocable right to use the machine. Therefore, it is argued Andrews could not have required company to have paid him

for the use of the machine and plaintiffs were only entitled to share in proceeds flowing directly to Andrews. The two contentions we have just mentioned present the principle arguments in this case. We find it unnecessary to decide either. The only real issue to decide is one of fact: Did defendant perform or attempt to perform his agreement with plaintiffs in good faith? The trial court found he did not and we agree.

It should be mentioned in passing that the able trial judge who tried this case experienced difficulty in limiting arguments and evidence to the sole issues admitted to be involved. At the conclusion of the argument in this court it was admitted that the real issue was the good faith of defendant.

In substance it can be said that after defendant became the owner of the Andrews Company he endeavored to siphon into that company all of the profits derived from the use of the invention and thereby excluded the plaintiffs from any participation. In effect, he relies upon the corporate fiction of the separate legal existence of company to sustain this action on his part. However, he was in complete control of company and could have, but did not, require company to pay him a reasonable royalty or other consideration for the profitable use of the invention being made by company. It is to be observed that he rented a building to company for which he extracted a considerable rental. It would seem, in fairness, that he should likewise have compelled his company to pay a fair return for the use of the inventions.

In a case of this kind the court may look through the veil of the corporate fiction. *McIver v. Norman,* supra. In this instance the rights of the re-

spective parties were fixed by the agreement between themselves as individuals. Andrews' obligation to faithfully perform his contract with plaintiffs did not permit him to hide behind purported rights of a corporation which he controlled as a means of defeating the justified anticipation of plaintiffs to share in the benefits of the inventions. The claim that the dubious legal rights of company, under these circumstances, could avoid defendant's duty cannot be sustained.

■ To this point we have not mentioned that Andrews also acquired Canadian patent rights to the invention. He acquired the Canadian patents as a result of an agreement with the Phillips Screw Company mentioned in paragraph (2b) of the agreement. Because of them he did license the use of the invention and sell machines to a Canadian company which profitably manufactured and sold in Canada the plastic lawn sprinkler. In respect to this transaction, made by Andrews individually, he contends his agreement with plaintiffs was limited to the continental United States and he was not required to account to plaintiffs for earnings he received as royalties from the Canadian company. In this regard, also, the trial court found against defendant and we concur. That part of the agreement which limited the rights granted to the plaintiffs to earnings within the United States was not a limitation upon the broad grant of paragraph (2a) of the agreement which we have previously quoted. The limitation in paragraph (2b) was only applicable to the rights resulting from the contract with the Phillips Screw Company.

The trial judge issued two opinions in this case. The first one decided plaintiffs' right to an accounting and the second set forth the basis upon which the trial judge fixed the equities of the parties. The opinions

reflect thoughtful consideration of the problems involved and an equitable determination of the rights of the parties as fixed by the agreement between them. We find the record supports the findings of the trial judge and the decree and judgment he entered. The decree is affirmed.