76 F.3d 1003
 34 Fed.R.Serv.3d 1149, 96 Cal. Daily Op. Serv. 986,
96 Daily Journal D.A.R. 1619
 OREGON RSA NO. 6, INC., Plaintiff-Appellee,
v.
CASTLE ROCK CELLULAR OF OREGON LIMITED PARTNERSHIP, A
Colorado limited partnership; Cellular, Inc., a
Colorado corporation, Defendants,
Pacific Telecom Cellular, Inc., a Delaware corporation,
Defendant-Appellant.
OREGON RSA NO. 6, INC., Plaintiff-Appellee,
v.
CASTLE ROCK CELLULAR OF OREGON LIMITED PARTNERSHIP, A
Colorado limited partnership; Cellular, Inc., a
Colorado corporation, Defendants-Appellants,
Pacific Telecom Cellular, Inc., a Delaware corporation, Defendant.
OREGON RSA NO. 6, INC., Plaintiff-Appellee,
v.
CASTLE ROCK CELLULAR OF OREGON LIMITED PARTNERSHIP, A
Colorado limited partnership, et al., Defendants,
and
Pacific Telecom Cellular, Inc., a Delaware corporation,
Defendant-Appellant.
OREGON RSA NO. 6, INC., Plaintiff-Appellee,
v.
CASTLE ROCK CELLULAR OF OREGON LIMITED PARTNERSHIP, A
Colorado limited partnership; Cellular, Inc., a
Colorado corporation, Defendants-Appellants.
OREGON RSA NO. 6, INC., Plaintiff-Appellant,
v.
CASTLE ROCK CELLULAR OF OREGON LIMITED PARTNERSHIP, A
Colorado limited partnership; Cellular, Inc., a Colorado
corporation; Pacific Telecom Cellular, Inc., a Delaware
corporation, Defendants-Appellees.
 Nos. 94-35903, 94-35965, 94-36009, 95-35168 and 95-35169.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 9, 1996.
Decided Feb. 13, 1996.
 
 Mark A. Turner, Ater, Wynne, Hewitt, Dodson & Skerritt, Portland, Oregon, for appellant Castle Rock and Cellular, Inc.
 James N. Westwood, Bruce L. Campbell, Miller, Nash, Weiner, Hager & Carlsen, Portland, Oregon, for appellant Pacific Telecom Cellular, Inc.
 Duane A. Bosworth, Davis Wright Tremaine, Portland, Oregon, Richard J. O'Brien, Gerard D. Kelly, Sidley & Austin, Chicago, Illinois, for appellee Oregon RSA.
 Appeals from the United States District Court for the District of Oregon, Owen M. Panner, District Judge, Presiding.
 Before JOHN T. NOONAN, Jr., LEAVY, and HAWKINS, Circuit Judges.
 Opinion by Judge NOONAN
 ORDER
 NOONAN, Circuit Judge:
 
 OPINION
 
 1
 Cellular, Inc., a Colorado corporation (Cellular); Castle Rock Cellular, Inc. (CRCI), a Colorado corporation; Castle Rock Cellular of Oregon Limited Partnership (CRCO), a Colorado partnership; and Pacific Telecom Cellular, Inc., a Delaware corporation (PTCI) appeal the judgment of the district court and the award of sanctions against them in a suit brought by Oregon RSA No. 6, Inc. (Oregon RSA). The merits of the case turn on the application of Oregon law to first refusal rights in a partnership agreement. Holding that the district court has accurately stated the law in this regard, we briefly summarize its conclusions. The sanctions for abuse of discovery involving the federal rules and the inherent authority of the district court we address more fully.
 
 FACTS AND PROCEEDINGS
 
 2
 The Crook County RSA Limited Partnership (the Partnership) was formed in 1989 and was licensed by the Federal Communications Commission to provide cellular phone service in the Oregon Rural Service Area. As of August 1992, when the events involved in this litigation began, the Partnership shares were held 25 percent apiece by Oregon RSA, the general partner; U.S. West NewVector (NewVector); CRCO; and Pacific Telcom Cellular of Oregon, Inc., which is owned by PTCI. At this time the parent of CRCO was CRCI, whose parent was Midvale Telephone Exchange (Midvale), an Idaho corporation. On August 4, 1992 Cellular sent a letter of intent to Midvale, indicating the state of negotiations through which Midvale's interest in CRCI and CRCO would be acquired by Cellular. Agreement on this transaction was effected at some point before October 28, 1992, at which time Cellular agreed to convey all its interests in CRCI and CRCO to PTCI by a Purchase Agreement (the Purchase Agreement). The parties do not dispute that CRCO and CRCI are essentially "shells"--CRCO's only significant asset is its interest in the Partnership and CRCI's only significant asset is its 51% share of CRCO. At this time the Purchase Agreement was known only to the parties to it.
 
 
 3
 Section 11.1 of the Partnership Agreement provided:
 
 
 4
 Limitation on Transfer; Right of First Refusal ... Before the General Partner or any Limited Partner sells, exchanges, transfers or assigns all or any part of its Partnership Interest to a non-Affiliate of such Partner, it shall offer, by giving written notice to the General Partner, that interest to all of the other Partners for the price at which and the terms under which such non-Affiliate has offered in writing to pay for such interest.
 
 
 5
 In November 1992, pursuant to this provision, NewVector offered the right of first refusal to its interest to its three partners. CRCO executed a form declining to take its share of NewVector's interest. In December 1992, however, CRCO attempted to rescind its refusal of the offer. This attempt consisted of a conversation between a CRCO officer and a lawyer representing Oregon RSA, in which, according to CRCO's evidence, the lawyer said, "That should be no problem," in response to CRCO's request to resubmit its right of first refusal form. Oregon RSA disputes that it made any agreement to revive CRCO's first refusal rights.
 
 
 6
 In January 1993 Oregon RSA brought suit seeking a declaration of its rights with respect to the NewVector interest. After filing its complaint, Oregon RSA discovered the existence of the Purchase Agreement to sell CRCO and CRCI to PTCI and amended its complaint to enforce the first refusal provisions of the Partnership against CRCI, CRCO, and Cellular.
 
 
 7
 On December 15, 1993 the district court gave summary judgment for Oregon RSA as to its first refusal right to the share in the Partnership held by CRCO and offered to PTCI. The district court's rulings in this respect were published at 840 F.Supp. 770 (D.Or.1993) and subsequently amended by unpublished opinions of August 23, 1994 and September 13, 1994. On March 13, 1994, the district court also gave summary judgment for Oregon RSA as to CRCO's claim based on the court's determination that Oregon RSA had not agreed to revive CRCO's first refusal rights to the NewVector interest.
 
 
 8
 Oregon RSA, accepting the invitation of the district court, moved for sanctions on the basis of the defendants' responses to discovery requests. The district court permitted the defendants to supplement the record by affidavits but did not hold an evidentiary hearing. By opinion of January 9, 1995 the district court awarded sanctions in the form of attorneys' fees caused by the defendants' delayed responses to discovery requests. The district court found that the defendants had violated Federal Rule of Civil Procedure 26(g)(3) and that they had acted in bad faith. The defendants were found jointly and severally liable for the sanctions awarded on the ground that they had filed a joint memorandum on the so-called "Midvale issue" and that they had shared the decisions relating to discovery and production of documents. The total award was $30,604.75.
 
 
 9
 Cellular, CRCI, CRCO, and PTCI appeal the judgment on the merits and the award of sanctions.
 
 ANALYSIS
 The Merits
 
 10
 The Attempted Recision. The sole ole e evidence submitted by CRCO as to its attempted recision of its refusal of the NewVector interest in the Partnership was its version of the conversation with outside counsel for Oregon RSA. As the district court pointed out, the lawyer's response was far from clear, so that there was no acceptance of an offer, if indeed an offer was being made. See C.R. Shaw Wholesale Co. v. Hackbarth, 102 Or. 80, 201 P. 1066, 1067 (1921) (holding that under Oregon law an acceptance of an offer must be "positive, unconditional, unequivocal, and unambiguous"). Neither was there any consideration for this alleged contract revoking the refusal. See McCombs v. McClelland, 223 Or. 475, 354 P.2d 311, 314 (1960) (holding that under Oregon law an agreement must be supported by consideration to be legally enforceable), nor was there evidence that the lawyer had the authority to act in this matter for Oregon RSA. The district court correctly applied familiar principles of contract law to hold that CRCO's attempted recision was unavailing.
 
 
 11
 As to Oregon RSA's right of first refusal of the interest offered to PTCI, the defendants argue that there was no sale, exchange, transfer, or assignment for purposes of § 11.1 of the Partnership Agreement because CRCO would remain a partner. What was being transferred was Cellular's control of CRCO. The district court correctly found that in every contract in Oregon there is an implied covenant of good faith and fair dealing and that this covenant was violated by the Purchase Agreement. See Sheets v. Knight, 308 Or. 220, 779 P.2d 1000, 1007 (1989). To permit the transfer of a shell company as a way around the first refusal provisions was "an artifice intended to thwart plaintiff's legitimate contractual expectation." Oregon RSA, 840 F.Supp. at 776.
 
 
 12
 CRCO, CRCI, Cellular, and PTCI argue that Swanson v. Warner, 125 Or.App. 524, 865 P.2d 493 (1993), prevents this court from looking behind the precise language of the Partnership Agreement to construe its meaning. Swanson, however, deals with the interpretation of a restrictive covenant, not a partnership agreement, and in Oregon, restrictive covenants are construed "most strongly against the covenant and will not be enlarged by construction." Id., 865 P.2d at 494. Ordinary contracts do not appear to be subject to this strict rule of construction.
 
 
 13
 We hold that the district court properly interpreted Oregon law. We also hold that the district court properly rejected the defendants' estoppel argument based upon a Wisconsin case involving a different partnership agreement and different litigants. See Hlavinka v. Blunt, Ellis & Loewi, Inc., 174 Wis.2d 381, 497 N.W.2d 756, 762 (App.), rev. denied, 501 N.W.2d 457 (Wis.1993) (requiring under Wisconsin law of collateral estoppel that the same issue have been litigated by the same parties). We turn to the discovery sanctions.
 
 The Sanctions
 
 14
 Cellular, CRCO, and PTCI appeal the district court's imposition of sanctions under its inherent powers and Federal Rule of Civil Procedure 26(g) for discovery abuses by these defendants.
 
 
 15
 Under Rule 26(g), the district court may sanction either the parties or their attorneys at its discretion. FED.R.CIV.P. 26(g)(3). We use an objective standard to determine whether a party or attorney has responded or objected to a discovery request for an improper purpose. See Zimmerman v. Bishop Estate, 25 F.3d 784, 790 (9th Cir.), cert. denied, --- U.S. ----, 115 S.Ct. 637, 130 L.Ed.2d 543 (1994) (applying an objective standard to determine whether conduct violated Rule 26(g)). A district court may also under its inherent powers sanction a party or counsel who "wilfully abuse[s] the judicial process." Roadway Express, Inc. v. Piper, 447 U.S. 752, 766, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980). Such sanctions require a court to make a finding of subjective bad faith. Barnd v. City of Tacoma, 664 F.2d 1339, 1342 (9th Cir.1982).
 
 
 16
 Although both kinds of sanctions may require "fair notice and an opportunity for a hearing on the record" to satisfy the requirements of due process, see, e.g., Tom Growney Equip. v. Shelley Irr. Dev., 834 F.2d 833, 834-836 (9th Cir.1987) (reversing district court's Rule 11 sanctions imposed without notice or a hearing); Western Sys., Inc. v. Ulloa, 958 F.2d 864, 873 (9th Cir.1992) (vacating sanctions order under court's inherent powers and remanding for a hearing), cert. denied, 506 U.S. 1050, 113 S.Ct. 970, 122 L.Ed.2d 125 (1993), defendants only challenge the district court's sanctions order under its inherent powers for lack of a hearing. We thus reach only that question and find that a hearing was necessary to determine whether PTCI, Cellular, and CRCO acted in bad faith. We reverse the district court's sanctions order pursuant to its inherent powers. We now consider the Rule 26(g) sanctions.
 
 
 17
 Beginning in July 1993 Oregon RSA sought the discovery of an unredacted copy of the Purchase Agreement between PTCI and Cellular. For months it was stalled by the defendants, who contended that there was confidential information in the Purchase Agreement and that the agreement could not be turned over without a protective order safeguarding that information. At no point did the defendants disclose to the plaintiff that the entire unredacted Purchase Agreement had already been filed by Cellular with the Federal Communications Commission, so that it was already a public document at the time when the defendants were putting on their show of confidentiality.
 
 
 18
 Counsel for PTCI seeks to excuse himself from the sanctions imposed under Rule 26(g) because he says he was told by Cellular's counsel that the public filing was the same as the redacted document he sought to give Oregon RSA. This excuse may relieve him of a charge of bad faith, but it does not excuse PTCI's objective failure to comply with the plaintiff's discovery requests and the objective inadequacy of the confidentiality reasons advanced. See Zimmerman, 25 F.3d at 790 (applying objective standard to determine whether conduct violated Rule 26(g)). As for Cellular, there appears to be no excuse for it not advising the plaintiff and the court of what had already been made public. It was no abuse of discretion by the district court to sanction both defendants under Rule 26(g).
 
 
 19
 The other document that Cellular belatedly made available was the August 1992 letter of intent from Cellular to Midvale. In June and again in October 1993 Oregon RSA had requested all documents related to the sale or transfer of the stock or assets of CRCO to Cellular. On January 10, 1994 the court noted that the plaintiff was entitled "to complete statements" about CRCI and CRCO. The court issued further orders supporting the plaintiff's motion to compel, culminating in an order of May 6, 1994 ordering the defendants to produce "any documents" relating to Cellular's acquisition of CRCI stock from Midvale.
 
 
 20
 Cellular and CRCO argue that the Midvale letter of intent did not have any relevance to the issues ultimately determined by the court. That may be true, but at the time discovery was sought the court was interested in ascertaining the degree that Cellular was in control of CRCO and the letter of intent was of relevance in making that determination. In any event, Cellular and CRCO did not oppose the discovery on the ground of relevance but simply failed to comply. Cellular's general counsel seeks to excuse herself on the ground that the court's order of May 1994 was not transmitted to her personally. That may be a personal excuse from a charge of bad faith; it is not an excuse for Cellular's objective failure to obey the command of the court. Because Cellular's and CRCO's failure to produce the letter intent was objectively unreasonable, the district court acted within its discretion to sanction them under Rule 26(g).
 
 
 21
 PTCI argues that it should not be sanctioned jointly and severally for Cellular's and CRCO's default. While the district court had reason to believe that the defendants acted together and that PTCI as the ultimate beneficiary of the Purchase Agreement probably had the dominant role, there is nothing in the record to show that PTCI advised the withholding of the Midvale document. Consequently, the sanction against PTCI on this issue cannot be upheld.
 
 
 22
 For the reasons stated, the judgment of the district court on the merits is AFFIRMED; the order of sanctions pursuant to Federal Rule of Civil Procedure 26(g) is AFFIRMED except that the question of sanctions is remanded to the district court for it to apportion the share to be paid by CRCO and Cellular and the share to be paid by PTCI in light of this opinion; and the district court's order of sanctions under its inherent powers is REVERSED.