97 F.3d 1460
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
PANDOL BROS. INC.; Antonio Munoz Y Cia, S.A., Plaintiffs-Appellants,
v.
INDEMNITY MARINE ASSURANCE CO. LTD.; Commercial Union
Assurance Company, PLC "T" A/C; Orion Insurance Co., PLC
"T" A/C; Skandia UK Insurance, PLC "T" A/C; Yasuda Fire &
Marine Insurance Company Europe, Ltd., "T" A/C Per the Orion
Insurance Company PLC "T" A/C "HT" Group; Ocean Marine
Insurance Company, Northern Assurance Company Ltd; Norwich
Union Fire Insurance Society, Ltd; London and Hull Maritime
Insurance Company Ltd English and American Insurance
Company, Ltd; Switzerland Insurance Company UK Ltd; Nippon
Insurance Company of Europe Ltd; Fuji Fire & Marine
Insurance Company UK; Phoenix Assurance; Polaris
Assurance; Folksam International Insurance Company (UK)
Ltd; Underwriters At Lloyds London; Defendants-Appellees.
PANDOL BROS. INC.; Antonio Munoz Y Cia, S.A., Plaintiffs-Appellees,
v.
INDEMNITY MARINE ASSURANCE CO. LTD.; Commercial Union
Assurance Company, PLC "T" A/C; Orion Insurance Co., PLC
"T" A/C; Skandia UK Insurance, PLC "T" A/C; Yasuda Fire &
Marine Insurance Company Europe, Ltd., "T" A/C Per the Orion
Insurance Company PLC "T" A/C "HT" Group; Ocean Marine
Insurance Company, Northern Assurance Company Ltd; Norwich
Union Fire Insurance Society, Ltd; London and Hull Maritime
Insurance Company Ltd English and American Insurance
Company, Ltd; Switzerland Insurance Company UK Ltd; Nippon
Insurance Company of Europe Ltd; Fuji Fire & Marine
Insurance Company UK; Phoenix Assurance; Polaris
Assurance; Folksam International Insurance Company (UK)
Ltd; Underwriters At Lloyds London; Defendants-Appellants.
 Nos. 95-15832, 95-15917.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 14, 1996.
Decided Aug. 30, 1996.
 
 Before: BOOCHEVER, NOONAN, and THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 FACTS AND PROCEEDINGS BELOW
 
 2
 This suit arises out of a dispute over financial responsibility for several shipments of oranges that arrived spoiled at their destination. Pandol grows, imports, and exports fresh fruits and vegetables. When the California orange crop was destroyed in 1990, Pandol entered into a joint venture with Munoz whereby Munoz would purchase oranges from independent growers in Spain, pack and ship them to Pandol. Pandol would then distribute the oranges.
 
 
 3
 In January 1991, Munoz made nine orange shipments to Pandol. Eight of those shipments arrived decayed and damaged, even though each of the shipments had been inspected and certified as "clean" by the Spanish counterpart of the USDA, the SOIVRE, which inspects shipments of fruit for compliance with the standards of the country of destination, in this case, the United States. Pandol had insured each of these shipments with an "all-risk" marine insurance policy.
 
 
 4
 Pandol sued Indemnity Marine Assurance Co. Ltd. and other insurers (referred to here as "the Underwriters") in the Central District of California for breach of an all-risk marine insurance policy for failing to pay claims on the eight shipments of damaged oranges. The Underwriters then intervened in an ongoing action between Munoz and Pandol, which was filed in the Eastern District of California.
 
 
 5
 The suit by Pandol against Underwriters was transferred to the Eastern District and consolidated with the action between Munoz and Pandol. Munoz and Pandol settled and dismissed their suits against one another, and Munoz joined the suit by Pandol against Underwriters. Underwriters subsequently filed a declaratory relief action against Pandol and Munoz and counterclaimed against Munoz for fraud and misrepresentation.
 
 
 6
 The district court bifurcated the action for trial, and coverage issues were tried separately from bad faith allegations and actual damages. In the first phase, the jury entered a special verdict finding that Pandol's and Munoz's losses were not covered under the all-risk policy, and the district court entered judgment in favor of Underwriters. In the second phase, which concerned Underwriters' counterclaim against Munoz, the jury returned a special verdict finding that Munoz had not acted in bad faith. The district court entered judgment in favor of Munoz.
 
 
 7
 Pandol, Munoz, and Underwriters all filed motions for a new trial or for judgment as a matter of law, which were denied. Underwriters also filed a motion for attorney's fees pursuant to Federal Rules of Civil Procedure 11, 26(g), and 37, which the district court denied.
 
 
 8
 Pandol, Munoz, and Underwriters timely appealed the judgment of the district court.
 
 ANALYSIS
 
 9
 I. THE DISTRICT COURT RULED CORRECTLY THAT THE ALL-RISK POLICY ONLY COVERED DECAY OR DAMAGE CAUSED DURING SHIPPING.
 
 
 10
 In general, a court reviews a district court's interpretation of an insurance policy de novo. Interpetrol Bermuda Ltd. v. Kaiser Aluminum Intern. Corp., 719 F.2d 992, 998 (9th Cir.1984).
 
 
 11
 Pandol and Munoz argue that the district court erred in ruling that the all-risk insurance policy required that the cause of the damage to the oranges occur during the policy period (here, during shipment). They argue that any loss that manifested itself during the policy period was covered, even if it was caused by an event that occurred before the policy period.
 
 Paragraph 2(a) of the policy reads:
 
 12
 Decay and deterioration, notwithstanding anything herein to the contrary, this insurance is to cover all risks of physical loss or damage and/or decay or deterioration due to external cause during the course of transit excluding, however, loss of market.
 
 
 13
 We agree with the district court that this paragraph is not reasonably susceptible to the interpretation advocated by Pandol and Munoz. Giving this paragraph its most natural reading, the prepositional phrase "during the course of transit" modifies all that comes before it. While the paragraph employs commas, no commas set off this phrase from what precedes it. Both the risk of decay or deterioration and the external cause must, therefore, occur during the course of transit. Had the parties meant that the external cause of the decay or deterioration could occur at some other point in time, the paragraph should have been phrased: "this insurance is to cover all risks of ... decay or deterioration during the course of transit that were due to external cause."
 
 
 14
 Because the natural reading of the paragraph supports the district court's conclusion that the damage to the oranges had to have been caused during the policy period to fall within the policy, we uphold the ruling of the district court on this issue.
 
 
 15
 II. PANDOL AND MUNOZ WAIVED THEIR OBJECTION TO JURY INSTRUCTIONS.
 
 
 16
 Pandol and Munoz argue that the district court erred when it gave a jury instruction on the "inherent vice" exception to the all-risk policy that defined inherent vice as "something in the nature of [a thing that] makes it susceptible to damage." Pandol and Munoz also argue that the district court erred when it instructed the jury that fortuitous damage was "damage caused by an event ... dependent on chance." Pandol and Munoz argue that they should not have had to prove that the cause of the damage was fortuitous, only that the damage was fortuitous.
 
 
 17
 By failing to object at trial, Pandol and Munoz waived their objection to these instructions. See Fed.R.Civ.P. 51 (requiring a party to object to a jury instruction and "state distinctly the grounds of the objection" before the jury retires to deliberate to preserve the objection for appeal). Pandol's and Munoz's objection to giving any instruction on inherent vice did not sufficiently focus the issue of dispute before the court to substitute for a formal objection. See Bertrand v. Southern Pac. Co., 282 F.2d 569, 572 (9th Cir.1960) (discussion of law in pretrial memoranda and the submission of proposed jury instructions did not clearly focus the issue of dispute before the court so as to provide a substitute for a formal objection), cert. denied, 365 U.S. 816 (1961). "The trial court is not required to rummage through trial briefs and proposed instructions in an effort to discover potential objections to instructions not yet given or formulated." Id. Similarly, Pandol's and Munoz's proposed jury instruction on the parties' respective burdens of proof was insufficient to preserve their objection to the court's instruction on fortuity. See Grosvenor Properties Ltd. v. Southmark Corp., 896 F.2d 1149, 1152 (9th Cir.1990).
 
 
 18
 III. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY ADMITTING EVIDENCE UNDERWRITERS OBTAINED REGARDING THE CAUSE OF DAMAGE TO THE ORANGES AFTER IT FILED SUIT FOR DECLARATORY JUDGMENT.
 
 
 19
 Pandol and Munoz argue that the district court should have granted their motion in limine to exclude evidence Underwriters obtained after they filed an action seeking a declaratory judgment that the oranges were not covered by the policy. We review the denial of a motion in limine for an abuse of discretion. See Larez v. City of Los Angeles, 946 F.2d 630, 638 (9th Cir.1991) (en banc).
 
 
 20
 Contrary to Pandol's and Munoz's assertion, California law does not require that evidence an insurer obtains after denying an insured coverage be excluded from evidence in a suit adjudicating coverage. If an insurer denies coverage on a specified ground, it may "waive[ ] the right to rely in subsequent litigation on any other grounds which a reasonable investigation would have uncovered." McLaughlin v. Conn. Gen. Life Ins. Co., 565 F.Supp. 434, 451 (N.D.Cal.1983). But in this case, it does not appear that Underwriters even denied Pandol coverage formally, much less on specified grounds. Under California law, filing a declaratory relief suit does not frustrate an insured's enjoyment of its contract rights, Atlas Assur. Co., Ltd. v. McCombs Corp., 146 Cal.App.3d 135, 150 (1983), and is not tantamount to a denial of coverage. Pandol's and Munoz's argument that Underwriters acted in bad faith by filing a declaratory relief action and should be prevented from using the fruits of their investigation is simply wrong. The district court did not abuse its discretion by denying the motion in limine.
 
 
 21
 IV. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING UNDERWRITERS' POST-TRIAL MOTION FOR ATTORNEY'S FEES AND COSTS UNDER FEDERAL RULES OF CIVIL PROCEDURE 11, 26(g), AND 37(c).
 
 
 22
 A district court's denial of sanctions under Rule 11, Rule 26(g), and Rule 37(c) is reviewed for an abuse of discretion. Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405 (1990) (Rule 11); Oregon RSA No. 6, Inc. v. Castle Rock Cellular of Oregon Ltd. Partnership, 76 F.3d 1003, 1007-08 (9th Cir.1996) (Rule 26(g)); Telluride Mgmt. Solutions, Inc. v. Telluride Inv. Group, 55 F.3d 463, 465 (9th Cir.1995) (Rule 37).
 
 
 23
 Underwriters argue that the district court should have decided whether Underwriters were entitled to the Seider memorandum and the contents of the Seider file before deciding whether to sanction Pandol and Munoz. Whether Underwriters were entitled to these documents is beside the point, however, because the record shows that the district court reviewed all of these documents and was aware of their contents before deciding whether to sanction Pandol and Munoz. Indeed, the district court's opinion denying Underwriters' sanctions motion explicitly discusses what effect the Seider Memorandum had on Pandol's basis for bringing suit. We therefore decline to remand to the district court for a determination whether the Seider file was protected by the work product doctrine.
 
 
 24
 A. Rule 11 Sanctions.
 
 
 25
 Underwriters argue that the district court should have granted its motion for Rule 11 sanctions against Munoz and Pandol because documents and deposition testimony showed that Pandol and Munoz lied about 1) the oranges being damaged during transit when they were not; 2) Munoz being an assured or a beneficiary under the policy when it was not; 3) the insurance policy covering pretransit damage to the oranges when it did not.
 
 
 26
 Under old Rule 11 (which was in effect when Pandol and Munoz filed this suit against Underwriters), a court must impose sanctions if a motion or a complaint is objectively "frivolous, legally unreasonable, or without factual foundation, or [ ] brought for an improper purpose." Larez v. Holcomb, 16 F.3d 1513, 1522 (9th Cir.1994). If there is an objectively reasonable basis for filing a motion, a court will not inquire into an attorney's subjective motivation. Townsend v. Holman Consulting Corp., 929 F.2d 1358, 1362 (9th Cir.1990) (en banc).
 
 
 27
 First, although Pandol and Munoz had in their possession evidence that supported Underwriters' contention that the damage to the oranges was not covered, they also had evidence that suggested that the damage was covered, and thus they had a reasonable basis for their suit on this issue: The oranges received a clean inspection from SOIVRE, which applied the same inspection standards as the USDA; the Spanish ministry of agriculture had declared that growing year a "no-frost" year; and there were temperature fluctuations during transit that could have damaged the oranges.
 
 
 28
 Second, Pandol had a reasonable basis for arguing that Munoz was a third-party beneficiary of the policy through an oral collateral agreement to the policy: Paulin, Pandol's insurance agent, testified to that collateral agreement at trial. The district court did not abuse its discretion in deciding that Pandol and Munoz were entitled to rely on that testimony in pursuing this claim and that it provided a reasonable basis for their doing so.
 
 
 29
 Finally, Pandol had a reasonable basis for arguing that the insurance policy covered pre-transit damage that manifested itself during the policy period. Although we have concluded that the policy language does not support that interpretation, there was a legitimate argument to the contrary and Paulin testified at trial that he had negotiated such a agreement. That Pandol paid a very high premium for this insurance also suggests broad coverage. Thus, the district court did not abuse its discretion in denying Underwriters' motion for Rule 11 sanctions on these three grounds.
 
 B. Discovery Sanctions
 
 30
 Underwriters moved for discovery sanctions for Pandol's alleged wrongful failure to admit to requests for admissions and false and evasive answers to interrogatories that requested the basis for the denial of the requests for admissions. The three requests for admissions were: 1) that none of the oranges were damaged in transit; 2) that at least some of the oranges were not in good condition when loaded; 3) that any damage to the oranges caused by an inherent vice was not covered by the insurance policy.
 
 
 31
 Rule 37 provides that a party shall be sanctioned for wrongfully denying a request for admission if the other party is later able to prove that fact, unless the court finds that there was a reasonable ground for the party to believe that it might prevail on that matter. Fed.R.Civ.P. 37(c). Rule 26 requires that all responses to interrogatories and requests for production of documents shall be certified by an attorney or a party that the response is, based on a reasonable inquiry, complete and correct. Fed.R.Civ.P. 26(g)(1). If a certification is made without substantial justification, a court shall sanction the person who certified the discovery response. Fed.R.Civ.P. 26(g)(3). At trial, the jury found facts contrary to all of Pandol's denials of the requests for admission.
 
 
 32
 As discussed above, Pandol had a reasonable factual basis for denying the first and second requests for admission. As for the third request for admission, that the policy did not cover damage caused by inherent vice, Pandol relied on the testimony of its insurance agent, Paulin, that there was an oral agreement that the inherent vice clause was null and void since it contradicted the terms of the all-risk clause. Even though Paulin proved to be an unreliable witness and the jury relied on contrary evidence to reach its conclusion that damage from inherent vice was excluded from coverage, we cannot say the district court abused its discretion in determining that Paulin's testimony gave Pandol a reasonable basis for denying the request for admission and for its response to interrogatories and request for production of documents.
 
 CONCLUSION
 
 33
 We AFFIRM the judgment of the district court.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3