Carlos **SHIBATA,** M.D., Plaintiff,

v.

Marco **LIM,** Claus Schnau, Titan Seafood, Inc., an administratively dissolved Florida corporation, Aquarius Seafood, Inc., a Florida corporation, Defendants.

No. 6:99–CV–984–Orl–28C.

United States District Court,
M.D. Florida,
Orlando Division.

Dec. 11, 2000.

---

Michael T. Haire, Becker & Poliakoff, P.A., Maitland, FL, Michael T. Haire, Michael T. Haire, P.A., Fern Park, FL, for Plaintiff.

Marco Lim, Orlando, FL, pro se.

Christopher Charles Cathcart, Ossinsky & Cathcart, P.A., Winter Park, FL, for Marco Lim.

Rex E. Russo, Coral Gables, FL, for Claus Schnau and Titan Seafood, Inc.

## ORDER

ANTOON, District Judge.

This cause is before the Court on Titan and Schnau's Motion to Dismiss the Amended Complaint (Doc. 48, filed May 5, 2000) and Defendant Marco Lim's Motion to Dismiss Amended Complaint (Doc. 50, filed May 9, 2000).

The United States Magistrate Judge has submitted a Report and Recommendation (Doc. 84, filed November 15, 2000) recommending that these motions be granted in part and denied in part. Specifically, the Report recommends that Counts III and V of the Amended Complaint be dismissed and that Plaintiff Shibata's request for attorney's fees in Count IV be stricken. No objections to the Report and Recommendation have been filed.

After an independent review of the record in this matter and noting that no objections have been filed, the Court agrees with the findings of fact and conclusions of law in the Report and Recommendation. Therefore, it is **ORDERED** as follows:

1. The Report and Recommendation (Doc. 84, filed November 15, 2000) is **ADOPTED** and **CONFIRMED** and made part of this Order.

2. Titan and Schnau's Motion to Dismiss the Amended Complaint (Doc. 48, filed May 5, 2000) is **GRANTED in part** and **DENIED in part.**

3. Defendant Marco Lim's Motion to Dismiss Amended Complaint (Doc. 50, filed May 9, 2000) is **GRANTED in part** and **DENIED in part.**

4. Counts III and V of Plaintiff's Amended Complaint (Doc. 45) are **DISMISSED.**

5. The request for attorney's fees in Count IV (unjust enrichment) of Plaintiff's Amended Complaint (Doc. 45) is **STRICKEN**.

## REPORT AND RECOMMENDATION

GLAZEBROOK, United States Magistrate Judge.

This cause came on for consideration at a hearing on October 2, 2000, on the following motions:

Motion: Titan and Schnau's motion to dismiss the amended complaint [Doc. No. 48].

Filed: May 9, 2000.

There on is recommended that the motion is granted in part and denied in part.

Motion: Defendant Marco Lim's motion to dismiss Amended complaint [Doc. No. 50].

Filed: May 9, 2000.

There on it is recommended that the motion is granted in part and denied in part.

## I. *BACKGROUND*

On August 6, 1999, plaintiff Carlos Shibata, M.D., brought this diversity action against Marco Lim, Claus Schnau, Titan Seafood, Inc., and Aquarius Seafood, Inc.,[1] alleging money lent (Count I), breach of contract (Count II), breach of covenant of good faith and fair dealing (Count III), and unjust enrichment (Count IV). On April 27, 2000, Dr. Shibata amended his complaint to add the additional claim of deceptive and unfair trade practices (Count V).

In his amended complaint, Dr. Shibata, contends that in October 1995 he loaned the defendants $200,000. Dr. Shibata claims that the terms of the loan are set in an October 10, 1995 letter from Dr. Shibata's son, Akira Shibata (who is not a defendant) to Dr. Shibata. The letter provides in full:

I wanted to take this opportunity to say thank you once again for providing us with the $200,000. This money will definitely help us to establish Titan Seafood Inc. within the seafood industry of Miami. As we discussed in our telephone conversation last night, Titan Seafood Inc., will repay you back the $200,000 in 7 payments over the next 4 years (or earlier if things go well). The first 6 of the 7 payments over the next 4 years will be for $30,000 dollars and the last payment will be for $20,000 bringing the total of $200,000. You will receive the first payment of $30,000 in 6 months (not later than the 6th of April 1996). There [sic] after you will receive $30,000 every six month[ ] as follows:

October 6th of 1996

April 6th of 1997

October 6th of 1997

April 6th of 1998

October 6th of 1998

You will receive the seventh and final payment in the sum of $20,000 in April of 1999. In April of 1999 the total amount of $200,000 will have been returned to you in full. Thanks Dad for everything you have done for us, we really appreciate it.

Docket No. 45, Exhibit A attached to Amended Complaint.

On April 3, 1996, Titan Seafood made one payment of $30,0000. No other payments have been made. Dr. Shibata claims that defendants have attempted to avoid repaying the money loaned to them by falsely characterizing the transaction as an investment by Dr. Shibata in the defendants' business ventures.

On May 5, 2000, defendants Titan Seafood and Schnau jointly filed a motion to dismiss [Docket No. 48]. Defendants argued that: 1.) the amended complaint failed to join an indispensable party—

---

1. Defendant Aquarius Seafood, Inc. failed to make on appearance in this case. Consequently, an September 17, 2000, Dr. Shibata moved for a default entry as to Aquarius Seafood. Docket No. 9. On that same date, the Clerk of Court entered a default against Aquarius Seafood. Docket No. 9.

namely Dr. Shibata's son, Carlos Shibata, Jr. (a/k/a Akira Shibata); and 2.) Count V under the Deceptive and Unfair Trade Practices Act failed to state a cause of action because it did not allege that defendants had made any statement or had undertaken any action to lead or entice Dr. Shibata to wire-transfer the $200,000. Docket No. 48. On May 9, 2000, defendant Lim also filed a motion to dismiss the amended complaint, alleging that only two of the five counts—Count I for Money Lent and Count II for Breach of Contract—state a cause of action. Docket No. 50. Defendant Lim seeks dismissal of the remaining counts for failure to state a cause of action against defendants.

## II. *THE LAW*

### A. Standard under Rule 12(b)(6)

The Court is empowered to dismiss an action "for failure to state a claim upon which relief can be granted." Fed. R.Civ.P. 12(b)(6). Such a motion should be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (citations omitted); *accord Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). The Court must take factual allegations as true and resolve any ambiguities or doubts regarding the sufficiency of the claim in favor of the plaintiff. *In re Johannessen,* 76 F.3d 347, 350 (11th Cir.1996). A complaint should be dismissed, however, if it is clear

that no relief could be granted crediting plaintiff's facts. *See id.* at 349. The Court is under no duty to rewrite plaintiff's complaint to find a claim. *Peterson v. Atlanta Housing Authority,* 998 F.2d 904, 912 (11th Cir.1993). The documents attached to an amended complaint may be considered under Rule 12(b)(6) without converting the motion into one for summary judgment. *See* Fed.R.Civ.P. 10(c); *Cortec Ind., Inc. v. Sum Holding, L.P.,* 949 F.2d 42, 47–48 (2d Cir.1991); *I. Meyer Pincus & Assoc. v. Oppenheimer & Co.,* 936 F.2d 759, 762 (2d Cir.1991).

### B. Standard under Rule 12(b)(7)

Under Rule 12(b)(7) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for "failure to join a party under Rule 19." In considering a Rule 12(b)(7) motion, the Court applies the standards of Federal Rule of Civil Procedure 19 to determine whether dismissal is appropriate. *Boulevard Bank Nat'l Ass'n v. Philips Med. Sys. Internat'l B.V.,* 15 F.3d 1419, 1422 (7th Cir.1994).

Rule 19 sets forth a two-part analysis. First, the Court must determine whether the absent person is a necessary party that should be joined under Rule 19(a).[2] *Laker Airways, Inc. v. British Airways,* 182 F.3d 843, 847 (11th Cir.1999). There is no precise formula for determining whether a person is a necessary party. *Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968). Whether a particular nonparty is necessary to an action is heavily influ-

---

**2.** Federal Rule of Civil Procedure 19(a) provides:

**(a) Persons to be Joined if Feasible.** A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that

interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and joinder of that party would render the venue of the action improper, that party shall be dismissed from the action.

enced by the facts and circumstances of each case. However, when making its determination, the court must consider whether complete relief can be granted with the present parties, and whether the absent party has an interest in the disposition. Fed.R.Civ.P. 19(a).

■ If the person should be joined under Rule 19(a), but for some reason cannot be, the Court must then proceed to the second stop in the analysis, which is contained in Rule 19(b).[3] Under Rule 19(b), the court must decide whether "in equity and good conscience" the suit should proceed without the necessary party. Fed. R.Civ.P. 19(b); *see also Doty v. St. Mary Parish Land Co.*, 598 F.2d 885, 887 (5th Cir.1979) ("A district court may refuse to proceed with the action if prejudice would result to either the absent party or to parties already joined."); *Laker Airways*, 182 F.3d at 848. The Court balances four factors in this analysis: 1.) how prejudicial a judgment would be to the nonjoined and joined parties; 2.) whether the prejudice could be lessened depending on the relief fashioned; 3.) whether the judgment without joinder would be adequate; and 4.) whether the plaintiff would have any alternative remedies were the case dismissed for nonjoinder. *See* 182 F.3d at 848.

### C. Unjust Enrichment

■ Under Florida law, the elements of a cause of action for unjust enrichment are: 1.) the plaintiff has conferred a benefit on the defendant, who has knowledge thereof; 2.) the defendant voluntarily accepts and retains the benefit conferred; and 3.) the circumstances are such that it would be inequitable for the defendant to

retain the benefit without paying for it. *See Hillman Constr. Corp. v. Wainer*, 636 So.2d 576, 577 (Fla.4th D.C.A.1994); *Peoples Nat'l Bank of Commerce v. First Union Nat'l Bank of Fla., N.A.*, 667 So.2d 876 (Fla.3d D.C.A.1996). The Second District Court of Appeals has described unjust enrichment in the following terms:

> The phrase "unjust enrichment" is used in law to characterize the result or effect of a failure to make restitution of, or for, property or benefits received under such circumstances as to give rise to a legal or equitable obligation to account therefor. It is a general principle, underlying various legal doctrines and remedies, that one person should not be permitted unjustly to enrich himself at the expense of another, but should be required to make restitution of or for property or benefits received, retained, or appropriated, where it is just and equitable that such restitution be made, and where such action involves no violation or frustration of law or opposition to public policy, either directly or indirectly.

*Lowry v. Lowry*, 463 So.2d 540, 541 (Fla.2d D.C.A.1985) (citing 66 Am.Jur.2d, *Restitution and Implied Contracts* § 3 (1973))

■ Florida law does not generally permit a party to pursue a cause of action on an express contract at the same time as he pursues a cause of action for unjust enrichment. *Hazen v. Cobb*, 96 Fla. 151, 117 So. 853 (1928); *Yates v. Ball*, 132 Fla. 132, 181 So. 341 (1937). Proof of an express contract between parties to a contract defeats a claim for unjust enrichment. *Solutec Corp. v. Young & Lawrence Assoc., Inc.*,

---

**3.** Federal Rules of Civil Procedure 19(b) provides: ·

> **(b) Determination by Court Whenever Joinder not Feasible.** If a person as described in subdivision (a)(1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus recognized as indispensable. The factors to be considered by the court include: first,

to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

243 So.2d 605 (Fla.4th D.C.A.1971). Both federal and Florida law, however, permit pleading in the alternative. Fed.R.Civ.P. 8(a)(1); *ThunderWave, Inc. v. Carnival Corp.*, 954 F.Supp. 1562 (S.D.Fla.1997) (applying Florida law) (a party can *alternatively* allege recovery under an express contract and seek equitable relief under the theory of unjust enrichment).

## D. The Florida Deceptive and Unfair Trade Practices

Florida's Deceptive and Unfair Trade Practices Act ("DUTPA"), Fla.Stat. §§ 501.201–.213, is a consumer protection law intended to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the course of any trade or commerce." Fla. Stat. § 501.201(2) (1999); *see Delgado v. J.W. Courtesy Pontiac GMC–Truck, Inc.*, 693 So.2d 602 (Fla.2d D.C.A.1997). By promulgating the DUTPA, the Florida legislature clearly intended to bestow "additional substantive remedies on the citizens of this state to recover economic damages related solely to a product or service purchased in a consumer transaction infected with unfair or deceptive trade practices or acts." *Delgado*, 693 So.2d at 606.

To state a cause of action under the DUTPA, the consumer must allege sufficient facts to show that the consumer has been actually aggrieved by the unfair or deceptive act committed by the seller in the course of trade or commerce. *See In re Crown Auto Dealerships, Inc.*, 187 B.R. 1009 (M.D.Fla.1995). Although the DUTPA does not require proof of actual fraud, the consumer must prove that the seller engaged in "unfair or deceptive acts or practices" to be entitled to relief. *Donald Frederick Evans and Associates, Inc. v. Continental Homes, Inc.*, 785 F.2d 897 (11th Cir.1986) (citing *Urling v. Helms Exterminators, Inc.*, 468 So.2d 451, 453 (Fla.1st D.C.A.1985)). The term "unfair or deceptive acts" is not clearly defined, but may require conduct that offends established public policy, and is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Urling*, 468 So.2d at 453. To state a cause of action under the DUTPA, the consumer must allege sufficient facts to show that the consumer has been actually aggrieved by the unfair or deceptive act committed by the seller in the course of trade or commerce. *See In re Crown Auto Dealerships, Inc.*, 187 B.R. 1009 (M.D.Fla.1995).

The statute defines "trade or commerce" as follows:

"Trade or commerce" means the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated. "Trade or commerce" shall include the conduct of any trade or commerce, however denominated, including any nonprofit or not-for-profit person or activity.

Fla.Stat. § 501.203(8). Under the statute, a "thing for value" may include "without limitations, any moneys, donation, membership, credential, certificate, prize, award, benefit, license, interest, professional opportunity, or chance of winning." Fla.Stat. § 501.203(9).

Only "consumers" have private rights of action under this section. Fla.Stat. § 501.202. Consumer means any: "individual; child, by and through its parent or legal guardian; firm; association; joint adventure; partnership; estate; trust; business trust; syndicate; fiduciary; corporation; or any other group or combination." Fla.Stat. § 501.203(7). The Florida courts have interpreted "consumer" as requiring a person or entity to be a "purchaser" of goods or services. *See N.G.L. Travel Associates v. Celebrity Cruises, Inc.*, 764 So.2d 672 (Fla.3d D.C.A.2000) (finding that travel agencies are not consumers entitled to protection under the DUTPA when they are the providers, not the purchasers, of the services), *see also Warren Technology, Inc., v. Hines Interests Ltd. Partnership*, 733 So.2d 1146 (Fla.3d D.C.A.1999) ("While

we agree that the plaintiff is a corporation and, therefore, could be a consumer ... the fact that it acted as the producer in the instant transaction precludes recovery."); *Packaging Corp. Int'l. v. Travenol Laboratories, Inc.,* 566 F.Supp. 1480 (S.D.Fla. 1983) (applying Florida law) (interpreting consumer as requiring a person or entity to be a purchaser of goods or services).

### E. Implied Covenant of Good Faith and Fair Dealing

■ Florida courts recognize an implied covenant of good faith and fair dealing in every contract. *Burger King Corp. v. C.R. Weaver,* 169 F.3d 1310, 1315 (11th Cir. 1999); *County of Brevard v. Miorelli Eng'g, Inc.,* 703 So.2d 1049, 1050 (Fla.1997) ("[E]very contract includes an implied covenant that the parties will perform in good faith"); *Sharp v. Williams,* 141 Fla. 1, 192 So. 476 (1939). The covenant ensures that neither party will do anything that will injure the right of the other party to receive the benefits of the contract. *County of Brevard,* 703 So.2d at 1050. This rule was developed in the contract arena and is aimed at protecting the reasonable or justifiable expectations of the contracting parties in light of their express agreement. *See Cox v. CSX Intermodal, Inc.,* 732 So.2d 1092, 1097 (1999) (protects the contracting parties' reasonable expectations); *Barnes v. Burger King Corp.,* 932 F.Supp. 1420 (S.D.Fla.1996); *Burger King Corp. v. Austin,* 805 F.Supp. 1007 (S.D.Fla.1992); *First Texas Savings Assoc. v. Comprop Investment Properties Ltd.,* 752 F.Supp. 1568, 1574 (M.D.Fla.1990) (protects the contracting parties' justifiable expectations).

■ The implied covenant is not a limitless duty or obligation. It is an interpreting, gap-filling tool of contract law. *See Taylor Equipment, Inc. v. John Deere Company,* 98 F.3d 1028, (8th Cir.1996) ("the covenant is a method to fill gaps in a contract"); *Chrysler Credit Corp. v. Marino,* 63 F.3d 574, 579 (7th Cir.1995) (holding that the covenant is gap-filling tool and is not applied to block use of terms that actually appear in the contract); *Oregon RSA No. 6. Inc. v. Castle Rock Cellular Ltd. Partnership,* 840 F.Supp. 770, 778–79 (D.Or.1993) (holding that when the contract is silent as to the permissibility of conduct, the covenant of good faith may be used to fill the gap). The covenant must relate to the performance of an express term of the contract, and it is not an abstract and independent term of a contract which may be asserted as a source of breach when all other terms have been performed pursuant to the contract requirements. *Burger King,* 169 F.3d at 1316; *Hospital Corp. of America v. Florida Med. Ctr., Inc.,* 710 So.2d 573 (Fla.4th D.C.A.), *rev. denied,* 727 So.2d 905 (Fla. 1998); *Bernstein v. True,* 636 So.2d 1364 (Fla.4th D.C.A.1994). A cause of action for breach of the implied covenant cannot be maintained (a) in derogation of the express terms of the underlying contract or (b) in the absence of breach of an express term of the underlying contract. *See Burger King,* 169 F.3d at 1318; *Hospital Corp.,* 710 So.2d at 575.

■ Because it is a gap-filling rule, the covenant applies only when the propriety of the conduct is not resolved by the terms of the contract. The covenant imposes limits upon one contracting party's ability to negatively impact the contract's value to the other contracting party. *Burger King,* 169 F.3d at 1316–17 (a claim may be pursued where one party's conduct, though not breaching the terms of the contract in a technical sense, nonetheless deprived the other party of the benefit of its bargain). It determines when a party may no longer pursue his own self-interest, but must instead engage in cooperative behavior by deferring to the other party's contractual interests. That situation ordinarily arises when: 1.) the contract is ambiguous about the permissibility of the conduct, or 2.) when the conduct is undertaken pursuant to a grant of discretion and the scope of that discretion has not been designated. *See Indian Harbor Citrus, Inc. v. Poppell,* 658 So.2d 605, 606 (Fla.4th D.C.A.1995) (covenant may be invoked to explain or

qualify ambiguous terms); *Cox,* 732 So.2d at 1097 (where the terms of the contract afford a party substantial discretion to promote that party's self-interest, the duty to act in good faith nevertheless limits that party's ability to act capriciously to contravene the reasonable contractual expectations of the other party). When, however, the express terms of the contract determine the permissibility of the conduct, no gap-filler is needed and the covenant does not apply.

■ To allege a breach of the implied covenant, the party must demonstrate a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence; but, rather by a conscious and deliberate act, which unfairly frustrates the agreed common purpose and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement. *See, e.g., Cox,* 732 So.2d at 1097 (covenant limits party's ability to act capriciously when exercising his discretion). Just what conduct will meet this criteria must be determined on a case by case basis and will depend on the contractual purposes and reasonably justified expectations of the parties.

However, a breach of the implied duty may be dismissed as redundant where the conduct allegedly violating the implied covenant is duplicative of the companion cause of action alleging breach of contract. *Sauer v. Xerox Corp.,* 95 F.Supp.2d. 125, 131 (W.D.N.Y.2000); *Geler v. National Westminster Bank USA,* 770 F.Supp. 210, 215 (S.D.N.Y.1991); *see also Ebrahimi v. City of Huntsville Bd. of Educ.,* 114 F.3d 162, 167 (11th Cir.1997) (suggesting that dismissal is the appropriate method for a duplicative cause of action); *Fikes v. City of Daphne,* 79 F.3d 1079, 1083 n. 6 (11th Cir.1996) (discussing the inherent authority of the district court to narrow issues in a case); *Marx v. Gumbinner,* 855 F.2d 783, 792 (11th Cir.1988) (noting that district courts may invoke their inherent power to narrow the issues for trial). Thus, a party can maintain a claim for breach of the implied duty only if it is based on allegations different than those underlying the accompanying breach of contract claim. If the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated.

## III. *DISCUSSION*

### A. Dismissal for Non–Joinder of an Indispensable Party

Defendants Titan Seafood and Schnau claim that in order to give complete relief *to the defendants,* Dr. Shibata must sue his son, Carlos Akira Shibata. Defendants claim that Dr. Shibata's son is an "indispensable party," because if Dr. Shibata were to prevail on any of his claims, Dr. Shibata's son would be liable to the defendants under a theory of contribution as a joint tortfeasor or obligor. Defendants have not filed and served a third-party complaint against Carlos Shibata.

Moreover, the Eleventh Circuit has stated that joint tortfeasors need not all be joined in one lawsuit. *Laker Airways,* 182 F.3d at 847 (citing to *Temple v. Synthes Corp.,* 498 U.S. 5, 7, 111 S.Ct. 315, 112 L.Ed.2d 263 (1990)) ("It has long be the rule that is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit."). Indeed, the Advisory Committee Notes to Rule 19(a) explicitly state that a tortfeasor with the usual "joint-and-several" liability is merely a permissive party to an action against another with like liability. Consequently, that Dr. Shibata's son may be liable to defendants as a joint tortfeasor, without more, does not make Dr. Shibata's son a necessary party.

■ Indeed, defendants have failed to allege sufficient facts showing that Dr. Shibata's son is an indispensable or even a necessary party to this action, Defendants

have failed to show that Dr. Shibata's son claims an interest relating to the subject of the action. Moreover, defendants have not shown that continuation of this case to judgment, without Dr. Shibata's son, would impair defendants' interests or expose defendants to a substantial risk of incurring double or inconsistent obligations. Defendants have been free from the start to move for leave to file a third-party complaint against Dr. Shibata's son, but have chosen not to do so. Defendants' claim that dismissal is now appropriate because Dr. Shibata has not sued his own son is without merit.

### B. Unjust Enrichment (Count IV)

■ Defendant Lim claims that Count IV fails to state a cause of action because a claim for unjust enrichment cannot exist if there is an express agreement between the parties. Defendant is correct that a plaintiff cannot recover under both unjust enrichment and breach of contract. *See Tobin & Tobin Insurance Agency, Inc. v. Zeskind*, 315 So.2d, 518 (Fla.3d D.C.A. 1975). However, both the Federal Rules of Civil Procedure and Florida law permit a party to allege, in the alternative, recovery under an express contract and seek equitable relief under the theory of unjust enrichment. *See* Fed.R.Civ.P. 8(a)(1); *ThunderWave, Inc. v. Carnival Corp.*, 954 F.Supp. 1562 (S.D.Fla.1997). To the extent that Dr. Shibata pleads unjust enrichment as an alternative to his breach of contract claim, such a claim should not be dismissed at this time. Dr. Shibata has sufficiently stated a cause of action for unjust enrichment. He has alleged that he lent defendants $200,000, that defendants knew they were required to repay that sum at the time they accepted the money, and that defendants would be unjustly enriched if they are not required to repay the amounts received, less the one payment of $30,000. Docket No. 1, ¶¶ 26 – 28. Defendants' motion to dismiss Dr. Shibata's unjust enrichment claim should be **DENIED.**

■ However, Dr. Shibata also seeks attorney's fees under his unjust enrichment count. Under Florida law, a party is not entitled to recover attorney's fees unless there is a statute that permits it, or unless there is a contract which permits it. *Plapinger v. Eastern States Properties Realty, Corp.*, 716 So.2d 315 (Fla.5th D.C.A. 1998); *K & M Electric Supply, Inc., v. Moduplex Corp.*, 686 So.2d 717, 718 (Fla.4th D.C.A.1997) (holding that an award of attorney's fees is improper where recovery is based on *quantum meruit* and not a contract); *Vining v. Carmona*, 596 So.2d 154 (Fla.3d D.C.A.1992). Dr. Shibata has not plead either a contract permitting attorney's fees, nor has he plead a violation of a statute in Count IV, which would permit the recovery of attorney's fees. Dr. Shibata's claim for attorney's fees under Count IV for unjust enrichment should be **STRICKEN.**

### C. Deceptive and Unfair Trade Practices Act (Count V)

Defendants Lim, Schnau, and Titan Seafood claim that Count V fails to state a cause of action under Florida's Deceptive and Unfair Trade Practices Act ("DUTPA") § 501.202, because a loan transaction is not covered by the Act, and because the amended complaint does not allege that the defendants made any statement or undertook any action to lead or entice Dr. Shibata to wire transfer $200,000 to the account of Titan Seafood.

■ The parties cite to no authority indicating that DUTPA was intended to apply to loans. Defendants state, without any authority, that lending money to a corporation does not fall within the provisions of the Florida DUTPA because it is not a "sale, rental, or otherwise, of any good or service, or ... property." This Court need not resolve this issue because it finds that, under Florida law, Dr. Shibata was not a "consumer" entitled to protection under the DUTPA. An examination of the transaction between the parties, as alleged by Dr. Shibata, shows that Dr. Shibata was not the "purchaser" of goods or services. Assuming (solely for the sake of argument) that the monies provided

constitute a "good or service" under the DUTPA, Dr. Shibata was the provider, not the purchaser, of the monies at issue, and therefore is not entitled to protection under the DUTPA.

■ Even if we were to assume that the transaction between the parties was protected by DUTPA, Counsel for Dr. Shibata admitted at the October 2, 2000 hearing that Dr. Shibata was not aware of any specific deceptive or unfair act committed by the defendants *at the time* the parties entered into their agreement. No where in the amended complaint are there allegations explaining how the defendants' conduct or action deceived Dr. Shibata into transferring $200,000 to the account of Titan Seafood. In fact, the letter to Dr. Shibata rendered by his son suggests that the funds were transferred at the son's behest. The facts alleged in the amended complaint, even if proven, fail to state a cause of action. Dr. Shibata's Count V under Florida's DUTPA should be **DISMISSED**.

### D. Breach of the Covenant of Good Faith and Fair Dealing (Count III)

■ In his amended complaint, Dr. Shibata alleges that defendants Lim, Schnau, and Titan Seafood breached the implied covenant of good faith and fair dealing by falsely characterizing the money transaction as an investment in order to avoid repayment on the loan. Docket No. 45, ¶ 22. Defendants move to dismiss this count, arguing that the failure to pay under the agreement and the institution of a defense does not implicate the covenant of good faith and fair dealing. This Court agrees.

As noted above, the implied covenant is not a limitless duty or obligation. It is method used to fill gaps in a contract where the contract is ambiguous as to the permissibility of the conduct or when the conduct is undertaken pursuant to a grant of discretion that has not been designated. In this case, Dr. Shibata argues that the parties expressly agreed that the monies provided constituted a loan and not an investment. Hence, the express terms of the contract determine the alleged impermissibility of defendants' failure to repay the loan. No gap-filler is needed to determine or protect the parties' expectations.

■ Moreover, this court rejects Dr. Shibata's claim that defendant's bad faith defense of falsely characterizing the loan transaction as an investment constitutes a violation of the implied covenant. Plaintiff has offered no Florida case law in support of such a broad extension of the good faith covenant, and this Court finds no basis in law for such an extension.[4]

Simply stated, Dr. Shibata's allegations are not sufficient to state any cause of action for a breach of the implied covenant of good faith and fair dealing. There is no difference between the factual underpinnings of Dr. Shibata's breach of contract claim and his claim for breach of the implied covenant. In each, Dr. Shibata claims that the monies provided were a loan which defendants were required to repay. Dr. Shibata has not pled a basis for a recovery of anything other than ordinary contract damages. Therefore, this Court finds that this claim is duplicative of Dr. Shibata's claims for breach of contact, and wholly subsumed within that claim.

**4.** This Court notes that the Restatement (Second) of Contracts § 205 (1981). Comment e, extends the obligation of good faith to the "assertion, settlement, and litigation of contract claims and defenses." According to Comment e, the covenant is breached by "conduct such as conjuring up a pretended dispute, [or] asserting an interpretation [of the contract] contrary to one's own understanding." Restatement § 205 cmt. e. No

Florida court has adopted this broad application of the implied covenant. *But see Riveredge Associates v. Metropolitan Life Ins. Co.,* 774 F.Supp. 897 (D.N.J.1991). This Court finds no basis for extending the implied covenant of good faith to the litigation of contract claims and defenses. Rather, a party can resort to a properly-briefed Rule 11 motion when presented with litigation claims or defenses that are unsubstantiated by fact.

Accordingly, defendants' motion for dismissal of Count III should be **GRANTED.**

## IV. *CONCLUSION*

For the foregoing reasons, it is **RECOMMENDED** that defendants Titan Seafood, Inc.'s and Claus Schnau's motion to dismiss [Docket No. 48] be **GRANTED** in part and **DENIED** in part. It is

**FURTHER RECOMMENDED** that defendant Marco Lim's motion to dismiss [Docket No. 50] be **GRANTED** in part and **DENIED** in part. It is

**FURTHER RECOMMENDED** that Dr. Shibata's Count III for Breach of the Covenant of Good Faith and Fair Dealing and Count V under Florida's Deceptive and Unfair Trade Practices Act should be **DISMISSED.** It is

**FURTHER RECOMMENDED** that Dr. Shibata's request for attorney's fees under Count IV for Unjust Enrichment should be **STRICKEN.**

Failure to file and serve written objections to the proposed findings and recommendations in this report, pursuant to 28 U.S.C. § 636(b)(1)(B) and (e) and Local Rule 6.02, within ten days of the date of its filing shall bar an aggrieved party from a de novo determination by the district court of issues covered in the report, and shall bar an aggrieved party from attacking the factual findings on appeal.

Dated: Nov. 15, 2000.