Dennis TUCKISH Plaintiff,

v.

POMPANO MOTOR COMPANY, a Florida Corporation, doing business as "Eddie Accardi Jeep Chrysler," and "Eddie Accardi Jeep–Chrysler–Dodge–Subaru," Defendant.

No. 03–61635–CIV.

United States District Court,
S.D. Florida,
Miami Division.

Sept. 23, 2004.

Robert W. Murphy, Fort Lauderdale, FL, for Plaintiff.

Donald E. Fucik, Fort Lauderdale, FL, for Defendant.

### ORDER DENYING MOTION TO DISMISS AND MOTION FOR A MORE DEFINITE STATEMENT

JORDAN, District Judge.

Pompano Motor Company's motion to dismiss and motion for a more definite statement [D.E.5–1 and 5–2] are DENIED for the reasons set forth below.

### I. RELEVANT FACTS [1]

Dennis Tuckish sues Pompano Motor Company, d.b.a. Eddie Accardi Jeep–

---

1. At the motion to dismiss stage, I take the factual allegations that Mr. Tuckish sets forth in his amended complaint as true. *See Peter-*

Chrysler–Dodge–Subaru, for alleged violations of the Motor Vehicle Information and Cost Savings Act, commonly known as the Odometer Act, 49 U.S.C. §§ 32701–32711 (Count I), and the regulations promulgated thereunder; the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201–501.211 (Count II); and for common-law fraud (Count III).

This case arises out of Mr. Tuckish's purchase of a motor vehicle, a model known as a Chrysler "PT Cruiser." Mr. Tuckish alleges that the large demand for PT Cruisers led Eddie Accardi to acquire significant inventories of "grey market" vehicles. *See* Amended Complaint at ¶ 8. Eddie Accardi's dealership imported PT Cruisers from Canada, which allowed it to obtain the vehicles at a discounted rate as a result of Canadian currency exchange rates. Through the grey market, dealers sell vehicles as "new" when the vehicles have been titled before to another buyer, and Mr. Tuckish alleges that Eddie Accardi has engaged in this practice. When Canadian cars are imported, the odometers must be converted from kilometers to miles, which creates an opportunity to tamper with the odometer reading and shave thousands of miles, thus increasing the market value of a vehicle.

On or about September 1, 2001, Mr. Tuckish went to the dealership and the salesperson showed him a 2001 Chrysler PT Cruiser, which the salesperson represented was "new" when in fact it was not. Moreover, the dealership displayed the vehicle in the new car lot as opposed to the used or pre-owned lot. Based on the representations of the dealership, Mr. Tuckish agreed to purchase the vehicle and executed and delivered to the dealership a "Motor Vehicle Order and Worksheet" ("Retail Buyers Order").

Prior to Mr. Tuckish's purchase of the vehicle and unbeknownst to him, the vehicle was originally sold by a Canadian automobile dealer to Marc Nuckle who titled the vehicle in the province of Quebec, Canada, and then later resold or otherwise transferred to an entity named "Fleetmax," which transferred its interest in the vehicle to Eddie Accardi. At the time of the purchase of the vehicle, the dealership affirmatively represented to Mr. Tuckish that the vehicle had never been titled before when the vehicle had in fact been titled to third parties.

In order to avoid disclosing to consumers such as Mr. Tuckish that grey market vehicles were being sold, the dealership engaged in a pattern and practice of knowingly placing such automobiles in a new car lot and providing consumers such as Mr. Tuckish with various dealer documents which directly or implicitly stated that the automobile was in fact new. Mr. Tuckish was provided with a "New Vehicle Delivery Checklist" and an automobile tag which denoted the vehicle as being "new" in an attempt to foster the impression that the vehicle was not previously titled. The dealership also gave Mr. Tuckish a "Lemon Law Booklet" which was required to be provided to purchasers of new vehicles in the State of Florida. Pursuant to the "FTC Used Car Rule," used car dealers are required to display a "Buyer's Guide" window sticker on each used car offered for sale. However, at the time of the purchase, the vehicle did not have a "Buyer's Guide" affixed to the vehicle and Mr. Tuckish was not provided a copy of same.

The dealership also failed to provide Mr. Tuckish with the actual title certificate for his examination and signature (as required by the Federal Motor Vehicle Information and Cost Savings Act, 49 U.S.C. § 32705) and in this way, the dealership was able to

*son v. Atlanta Housing Auth.,* 998 F.2d 904, 912 (11th Cir.1993).

hide and conceal from Mr. Tuckish the fact that it knew who was the vehicle's prior owner and that the vehicle was titled to another buyer. The dealership had Mr. Tuckish sign a power of attorney which enabled it to affix the name of Mr. Tuckish to the title certificate.

After taking delivery of the vehicle, Mr. Tuckish experienced significant problems in its operation, such as power loss and engine surge. After several attempts to repair the vehicle, in November, 2002, he filed a request for arbitration with the Florida Office of the Attorney General, Florida New Motor Vehicle Arbitration Board ("Board"). *See Dennis Tuckish v. Daimler–Chrysler Motors Corporation,* Case No.: 90–2002–1186/FTL," in what is known as a Lemon Law proceeding. *See id.* On or about February 12, 2003, after an evidentiary hearing, the Board determined that the vehicle was not a "new vehicle" within the meaning of Florida Statute § 681.102(15) and, as a result, the Board held in favor of the manufacturer, Daimler–Chrysler, and denied the relief requested by Mr. Tuckish in the arbitration proceeding. *See id.* The actions of the dealership in selling him a "used" vehicle eliminated Mr. Tuckish's rights as a consumer under the Florida Lemon Law. As a result, Mr. Tuckish suffered actual damages, including but not limited to a reduction in the length of the warranty on the vehicle, the potential loss of the factory warranty, and the loss of value. *See id.*

In Count I of the Amended Complaint, Mr. Tuckish alleges an action for violation of the Motor Vehicle Information and Cost Savings Act, 49 U.S.C. § 32710, known more commonly as the Federal Odometer Act ("Odometer Act") and the regulations promulgated thereunder. *See* Amended Complaint at ¶ 40. Mr. Tuckish claims that Eddie Accardi violated the Odometer Act with intent to defraud by failing to give Mr. Tuckish an opportunity to examine and sign the title certificate, transferring the vehicle in violation of the Odometer Act and the regulations promulgated thereunder. *See* Amended Complaint at ¶¶ 42, 43. Mr. Tuckish alleges that, as a result of the violation of the Odometer Act, the dealership is liable to Mr. Tuckish in an amount equal to three times the actual damages or $1,500.00, whichever is greater, plus attorneys fees and costs, pursuant to 49 U.S.C. § 32710. *See* Amended Complaint at ¶ 44.

In Count II of the Amended Complaint, Mr. Tuckish alleges an action for injunctive relief pursuant to Florida Statute § 501.201, known more commonly as the "Florida Deceptive and Unfair Trade Practices Act" (the "DUTPA"), brought pursuant to the doctrine of pendant jurisdiction. *See* Amended Complaint at ¶ 46. Mr. Tuckish alleges that the dealership violated the FTC Used Car Rule and the violation of the FTC Used Car Rule is a per se violation of the DUTPA. *See* Amended Complaint at ¶¶ 50, 51. More particularly, Mr. Tuckish alleges that the dealership has engaged in unfair methods of competition, unconscionable acts or practices, and unfair and deceptive acts or practices in the conduct of trade or commerce in violation of Florida Statutes § 501.204(1). *See* Amended Complaint at ¶ 52. Therefore, Mr. Tuckish claims that he is entitled to obtain a declaratory judgment and to enjoin the dealership from further violations of the DUTPA. *See* Amended Complaint at ¶ 53.

In Count III of the Amended Complaint, Mr. Tuckish alleges an action for common law fraud brought pursuant to the doctrine of supplemental jurisdiction. *See* Amended Complaint at ¶ 56. Mr. Tuckish alleges that the dealership misrepresented material facts by claiming that the vehicle was "new" when in fact the vehicle was previously titled and was a grey market Canadi-

an vehicle. *See* Amended Complaint at ¶ 58. Furthermore, Mr. Tuckish alleges that the dealership omitted material facts by failing to disclose that the vehicle was titled to a prior owner and that the manufacturer's warranty was shortened or eliminated, and that the vehicle was a "grey market vehicle." *See* Amended Complaint at ¶ 59. Mr. Tuckish claims that the dealership knew that the representations were false, or made such representations recklessly, when the dealership had no reasonable grounds for believing those representations were true. Mr. Tuckish alleges that the dealership knew that the omissions concerning the vehicle were material and important and that the dealership intended to deceive Mr. Tuckish and Mr. Tuckish relied upon the misrepresentations to his detriment. *See* Amended Complaint at ¶¶ 60–62. Mr. Tuckish alleges that as a direct and proximate result of the fraud and misrepresentations by the dealership, he was damaged and therefore he demands judgment for damages together with costs. *See* Amended Complaint at ¶ 63.

## II. STANDARD

Pompano Motor has filed a motion to dismiss the amended complaint, pursuant to Rule 12(b)(6), and a motion for a more definite statement, pursuant to Rule 12(e) [D.E.5]. Pompano Motor contends that the amended complaint fails to state a cause of action for violations of the Odometer Act and the DUTPA, and fails to plead with particularity a cause of action for common law fraud, as required by Rule 9.

Under Rule 12(b)(6), a motion to dismiss should not be granted "unless the plaintiff can prove no set of facts which would entitle him to relief." *Martinez v. American Airlines, Inc.*, 74 F.3d 247, 248 (11th Cir.1996). In making this determination, I must take all of Mr. Tuckish's allegations in the complaint as true, and must view the complaint in the light most favorable to

him. *See Peterson v. Atlanta Housing Auth.*, 998 F.2d 904, 912 (11th Cir.1993). Mr. Tuckish's amended complaint should not be dismissed unless it appears beyond a doubt that he can prove no set of facts in support of his claim which would entitle him to relief. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Furthermore, in deciding a motion to dismiss, I may "presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

## III. ANALYSIS

Pompano Motor's primary ground for dismissal, is that the amended complaint fails to state a cause of action on any of the three counts based on Mr. Tuckish's failure to quote the language from the documents presented by the dealership and signed by Mr. Tuckish when he purchase the PT Cruiser. Pompano further argues that the amended complaint fails to state a claim for fraud with particularity as required by Rule 9.

■ With respect to Count I, Mr. Tuckish alleges in his amended complaint that Pompano Motor Company violated the Odometer Act, 49 U.S.C. § 32701, by "failing to give Mr. Tuckish an opportunity to examine and sign the title certificate," and acting with the intent to defraud. The purpose of the Odometer Act is to (1) prohibit tampering with motor vehicle odometers; and (2) to provide safeguards to protect purchasers in the sale of motor vehicles with altered or reset odometers. *See* 49 U.S.C. § 32701(b).

The Odometer Act imposes on car dealers various requirements intended to ensure that automobile consumers are provided with accurate statements of a car's mileage. *See* 49 U.S.C. § 32705. "A per-

son that violates this chapter or a regulation prescribed or order issued under this chapter, with intent to defraud, is liable for 3 times the actual damages or $1,500, whichever is greater." 49 U.S.C. § 32710(a). Pursuant to the Odometer Act, the Secretary of Transportation has passed regulations and one regulation imposed the requirement that a dealer shall, upon sale of a motor vehicle, "disclose the mileage to the transferee in writing *on the title* ...." 49 C.F.R. § 580.5(c) (emphasis added). Except for very limited circumstances, regulations implementing the Odometer Act require that an original certificate of title signed by the transferor be used as the sole means of providing odometer information. *See* 49 C.F.R. § 580.5. The exceptional circumstances in which the power of attorney may be used as a substitution for an original certificate of title occur only when "the transferor's title is physically held by a lienholder," or "if the transferor to whom the title was issued by the State has lost his title was issued by the State has lost his title and the transferee obtains a duplicate title on behalf of the transferor ...." 49 C.F.R. § 580.13(a).

█ Failure to provide a purchaser with a copy of the certificate of title, when such title is available, technically violates the Odometer Act. *See Locascio v. Imports Unlimited, Inc.,* 309 F.Supp.2d 267, 270 (D.Conn.2004). The court in *Locascio* held that "if the title certificate is not provided to the purchaser, the appropriate mileage is necessarily not disclosed to the purchaser *on the title certificate,* as required by the Act and it makes no difference that the accurate mileage may be disclosed on a separate form because, absent one of the excusing circumstances in the regulations, the mileage must be disclosed *on the title certificate.*" *Id.* Mr. Tuckish, in his amended complaint, alleges just that. Mr. Tuckish claims that the dealership failed to provide him with the actual title certificate, for his examination and signature, as re-

quired by the Odometer Act and therefore was able to hide and conceal from Mr. Tuckish the fact that the vehicle was titled to another buyer and the dealership knew who was the prior owner. *See* Amended Complaint at ¶ 31.

As stated above, in order for a civil plaintiff to recover damages under the Odometer Act, he must prove a violation of the act made with intend to defraud. *See* 49 U.S.C. § 21710(a). In order to satisfy the second element of his claim, Mr. Tuckish must allege that the dealership violated the Odometer Act *with intend to defraud.* Mr. Tuckish stated in his amended complaint that Eddie Accardi violated the Odometer Act with the intent to defraud. *See* Amended Complaint at ¶ 43. In his memorandum in opposition, Mr. Tuckish cites *Yazzie v. Amigo Chevrolet, Inc.,* 189 F.Supp.2d 1245, 1247 (D.N.M.2001) and *Salmeron v. Highlands Ford Sales, Inc.,* 223 F.Supp.2d 1238 (D.N.M.2002), to support his conclusion that "the purpose of [the statute] is to make the title document the sole vehicle for odometer disclosures." Withholding of used vehicle certificate title is a violation of Odometer Act and dealership shows requisite intent to defraud by replacing certificate of title with power of attorney. *Yazzie,* 189 F.Supp.2d at 1250. These courts held that a general intent to defraud satisfied the Odometer Act's requirements. Some courts, however, have declined to follow the reasoning of the above cases and "have held that the Odometer Act was only meant to cover fraud related to a vehicle's mileage." *Locascio,* 309 F.Supp.2d at 270. *See also Hamilton v. O'Connor Chevrolet, Inc.,* Case No. 02 C 1897, 2004 WL 1403711, **9–10 (N.D.Ill. June 23, 2004) (finding no intent to defraud where plaintiffs presented no evidence that defendant intended to defraud them with respect to the car's mileage or its odometer reading). The court in *Hamilton* held that "civil liability under the

Odometer Act is limited to mileage fraud and odometer tampering and plaintiff cannot maintain an action under the Odometer Act where [he] makes no allegation of odometer tampering." *Id.* The defendant in *Hamilton* failed to comply with the Odometer Act by disclosing the vehicle's mileage on the application for vehicle title and registration rather than on the title itself. The court found no intent to defraud because the plaintiffs admittedly were not challenging the accuracy of the disclosed odometer reading or asserting that defendant tampered with the odometer in any way. The court agreed with the defendant, who claimed that plaintiffs could not prove the requisite intent to defraud and held that "[t]o hold otherwise would expand the meaning of the Federal Odometer Act so that almost any state-law claim for fraud [implicating a car sale] would also be a violation of federal law." *Id.* Other cases have rejected attempts to use the Odometer Act as a more generalized car-sale-fraud statute in instances where the allegations did not reflect any intent to defraud concerning the car's mileage or any allegation of odometer tampering. *See Locascio,* 309 F.Supp.2d at 270–71; *accord Compton v. Altavista Motors, Inc.,* 121 F.Supp.2d 932, 942 (W.D.Va. 2000) (rejecting claim concerning alleged fraud concerning time when ownership of vehicle actually was transferred via title and other transaction documentation).

In any event, Mr. Tuckish does allege intent to defraud in his amended complaint, when he states that when Canadian cars are imported, the odometers must be converted from kilometers to miles, which creates an opportunity to tamper with the odometer reading and shave thousands of miles, thus increasing the market value of a vehicle. *See* Amended Complaint at ¶ 11. Mr. Tuckish also claims that the dealership failed to provide him with the actual title certificate thereby hiding and concealing from Mr. Tuckish the fact that

it knew who the prior owner of the vehicle was and that the vehicle has been titled to another buyer. *See* Amended Complaint at ¶ 31. In Count I, Mr. Tuckish alleges that Eddie Accardi violated the Odometer Act by failing to give him an opportunity to examine and sign the title certificate, transferring the vehicle in violation of the Odometer Act with the intent to defraud. *See* Amended Complaint at ¶¶ 42, 43. Therefore, Mr. Tuckish alleges the violation of the Odometer Act with the required intent to defraud. Accordingly, Mr. Tuckish stated a cause of action under the Odometer Act and the motion to dismiss is denied as to Count I.

 With respect to Count II, Mr. Tuckish alleges that Pompano Motor Company also violated Florida Statute § 501.201. Florida's Deceptive and Unfair Practices Act ("DUTPA") is a consumer protection law intended to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the course of any trade or commerce." Fla. Stat. § 501.202(2). By promulgating the DUTPA, the Florida legislature clearly intended to bestow "additional substantive remedies on the citizens of this state to recover economic damages related solely to a product or service purchased in a consumer transaction infected with unfair or deceptive trade practices or acts." *Delgado v. J.W. Courtesy Pontiac GMC–Truck, Inc.,* 693 So.2d 602, 606 (2d Dist. 1997). A violation of DUTPA may be based on any of the following:

(a) Any rules promulgated pursuant to the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 41 *et seq.;* (b) The standards of unfairness and deception set forth and interpreted by the Federal Commission or the federal courts; (c) Any law, statute, rule, regu-

lation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive or unconscionable acts or practices.

Fla. Stat. § 501.203(3).

■ Therefore, "the Florida DUTPA defines a violation of that law to include violations of rules promulgated pursuant to the Federal Trade Commission Act." *See Nieman v. Dryclean U.S.A. Franchise Company, Inc.* 178 F.3d 1126, 1128–29 (11th Cir.1999). The FTC "Used Car Rule" was promulgated pursuant to the Federal Trade Commission Act, 15 U.S.C. § 2309(b) and §§ 5(a)(1) and 18 of the FTC Act, 15 U.S.C. §§ 45(a)(1) and 57a(a)(1). *See United States v. Crystal Ford, Ltd.,* Case No. JH–87–1328, 1988 WL 108363, *2 (D.Md. May 5, 1988). The Rule itself requires that used vehicle dealers display a Buyer's Guide on the side window of any used vehicle offered for sale and that dealers include specific information on the Buyer's Guide as set out in the Rule. *See* 16 C.F.R. §§ 455.2(a) and 455.3. Mr. Tuckish alleges that at the time of the purchase of the vehicle by Mr. Tuckish, the vehicle did not have a Buyer's Guide affixed to the vehicle and Mr. Tuckish was not provided a copy of same at the time he consummated the purchase of the vehicle. *See* Amended Complaint at ¶ 27. In Count II, Mr. Tuckish alleges that the dealership therefore violated the FTC Used Car Rule and the violation of the FTC Used Car Rule by the dealership is a per se violation of the DUTPA. *See* Amended Complaint at ¶¶ 50, 51. Since the violation of the "any rules promulgated pursuant to the Federal Trade Commission Act" is a violation of the DUTPA and the FTC Used Car Rule is promulgated pursuant to the FTC, Mr. Tuckish has stated a cause of action under DUTPA.

■ In order to state a cause of action under the DUTPA, the consumer must also allege sufficient facts to show that he has been actually aggrieved by the unfair or deceptive act committed by the seller in the course of trade or commerce. *See In re Crown Auto Dealerships, Inc.,* 187 B.R. 1009, 1018 (Bankr.M.D.Fla.1995). Although the DUTPA does not require proof of actual fraud, the consumer must prove that the seller engaged in "unfair or deceptive acts or practices" to be entitled to relief. *Shibata v. Lim,* 133 F.Supp.2d 1311, 1317 (M.D.Fla.2000). *See also Donald Frederick Evans and Associates, Inc. v. Continental Homes, Inc.,* 785 F.2d 897, 915–916 (11th Cir.1986) ("The central aim of the Florida statute is to 'make consumers whole for losses caused by fraudulent consumer practices.'"). Mr. Tuckish alleges that Pompano engaged in unfair methods of competition, unconscionable acts or practices, and unfair and deceptive acts of practices by not complying with the Used Car Rule, 16 C.F.R. § 455. The Used Car Rule requires the dealer to prepare, fill and display on the used vehicle a "Buyers Guide," containing name and address of the dealership, make, model, model year, and vin, and warnings of "As Is"/No Warranty or box labeled "warranty," which Mr. Tuckish alleges Pompano Motor Company failed to do. The failure to comply with the Used Car Rule deceived Mr. Tuckish in believing that he was buying a "new" car when in fact he was not. Accordingly, Mr. Tuckish stated a cause of action under the DUTPA and the motion to dismiss is denied as to Count II.

■■ With respect to Count III, Mr. Tuckish alleges common law fraud by stating elements which must be present in order to establish such claim. The elements of common law fraud are "1) a false statement of fact, 2) known by the person making the statement to be false at the time it was made, 3) made for the purpose of inducing another to act in reliance

thereon, 4) action by the other person in reliance on the correctness of the statement, and 5) resulting damage to the other person." *See Tucci v. Smoothie King Franchises, Inc.,* 215 F.Supp.2d 1295, 1302 (M.D.Fla.2002). Rule 9(b) of the Federal Rules of Civil Procedure provides that in all averments of fraud, the circumstances constituting fraud shall be stated with particularity. According to the Eleventh Circuit, Rule 9(b) may be satisfied if the complaint set forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud. *See Brooks v. Blue Cross and Blue Shield of Florida, Inc.,* 116 F.3d 1364, 1371 (11th Cir.1997). Mr. Tuckish, in his amended complaint, alleges that the salesperson from the dealership falsely represented to Mr. Tuckish that the vehicle was "new" when in fact it was not and that the vehicle was displayed in the new car lot as opposed to the used or pre-owned lot. *See* Amended Complaint at ¶ 14. Moreover, Mr. Tuckish alleges in Count III that the dealership omitted material facts by failing to disclose that the vehicle had been titled to a prior owner and that the manufacturer's warranty had been shortened or eliminated, and that the vehicle was a "grey market vehicle." *See* Amended Complaint at ¶ 59. Time and place of statements are stated in paragraph 12 of the amended complaint: "on or about September 1, 2001, Mr. Tuckish went to the place of business of the dealership at 909 S. Federal Highway, Pompano Beach, Florida 33062."

 ▮ "The plaintiff must plead facts as to time, place, and substance of the defendant's alleged fraud, specifically the details

of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." *Hill v. Morehouse Medical Associates, Inc.,* Case No. 02–14429, 2003 WL 22019936, *3 (11th Cir. Aug.15, 2003). *See also United States ex rel. Clausen v. Lab. Corp. of Am.,* 290 F.3d 1301, 1310 (11th Cir.2002) (holding that Rule 9(b) is satisfied if the complaint includes statements or omissions made, the time and place of occurrence, the content of statements and its manner, and what the defendants obtained as a consequence of the fraud). Mr. Tuckish's complaint contains exactly that. Again, time and place of fraud are set out in paragraph 12 of the amended complaint and paragraph 14 sets out contents of statements made by the sales person to Mr. Tuckish. The alleged fraud consists of false representation of the vehicle as "new" when in fact it was used (¶ 14), the representation that the vehicle was never titled before when in fact it was titled to third parties (¶ 20), providing Mr. Tuckish with a "new vehicle delivery checklist," a new vehicle tag, and a "Lemon Law Booklet," which are given to the purchasers of new vehicles, while the vehicle purchased by Mr. Tuckish was used (¶¶ 22, 23).

 ▮ "The particularity requirement, however, must be read in conjunction with Federal Rule of Civil Procedure 8's directives that a complaint need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief and that each averment of the complaint should be simple, concise, and direct." *See Hill,* 2003 WL 22019936 at *3. "A court considering a motion to dismiss for failure to plead fraud with particularity should always be careful to harmonize the directives of Rule 9(b) with the broader policy of notice pleading." *Friedlander v. Nims,* 755 F.2d 810, 813 (11th Cir.1985). Therefore, I conclude that Mr. Tuckish has stated a cause of action for fraud with

sufficient particularity to comply with Rule 9(b). The motion to dismiss is denied as to Count III.

In the alternative, Pompano Motor also moves for a more definite statement pursuant to Rule 12(e). "Federal courts disfavor motions for more definite statement, in the light of the liberal pleading and discovery requirements." *See Hobbs v. BH Cars. Inc.,* Case No. 04 60327–CIV, 2004 WL 1242838, *2 (S.D.Fla. June 4, 2004). Motions for a more definite statement are not substitutes for discovery. *Id.* Therefore, motion for a more definite statement will only be granted if "the pleading is so vague or ambiguous that the opposing party cannot respond in good faith or without prejudice to himself." *Id.* For the reasons stated above, Pompano Motor is not faced with this kind of problem in this case. Its motion for more definite statement is denied.

## IV. CONCLUSION

In sum, the motion to dismiss and for a more definite statement are DENIED. Mr. Tuckish's allegations are sufficient to sustain causes of action under all three counts. Pompano's answer is due on October 8, 2004.